IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| FREDERICK JAMISON, | ) | Civil Action No. 3:04-0601-CMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In September 2000, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held January 17, 2002, at which Plaintiff appeared and testified, the ALJ issued a decision dated April 26, 2002, denying benefits and finding that Plaintiff was disabled between July 10, 1995 and November 17, 2000. The ALJ denied benefits after November 17, 2000, finding that Plaintiff was not disabled because, after hearing the testimony of a vocational expert ("VE"), the ALJ concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty-eight years old at the time of the ALJ's decision. He has a high school education and past relevant work as a pumproom operator and boiler room operator. Plaintiff alleges disability since July 10, 1995, due to residuals of a crush injury to his left middle finger.

The ALJ found (Tr. 22-23):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(k) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's crush[] injury to the left hand is a severe impairment, based upon the requirements in the Regulations (20 CFR § 404.1521).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's testimony is essentially credible.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment. (20 CFR § 404.1527).

7. From July 10, 1995 to November 17, 2000, the claimant's impairments prevent him from sustaining an eight-hour workday in substantial numbers of jobs. Since November 17, 2000, the claimant has the following residual functional capacity: light work that allows a sit/stand option and does not require the use of the left hand.

8. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

9. The claimant is a "younger individual between the ages of 45 and 49" (20 CFR § 404.1563).

10. The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

11. Due to the claimant's age and residual functional capacity, the issue of transferability of skills is not material.

12. From July 10, 1995 to November 17, 2000, there are no jobs existing in significant numbers, which he could have performed. This finding is based upon Social Security Ruling 96-8p.

13. Since November 17, 2000, although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a greeter (DOT # 299.677-010) and a dressing room checker (DOT # 299.677-014).

14. The claimant was under a "disability" as defined by the Social Security Act from July 10, 1995 to November 17, 2000. However, since November 17, 2000 the claimant has not been under a "disability," as defined in the Social Security Act (20 CFR § 404.1521(f)).

On January 16, 2004, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on February 27, 2004.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

3

to last for a continuous period of not less than twelve months…." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ erred in failing to fully consider the medical evidence of his complaints of pain and side effects of his medication and (2) the ALJ erred in failing to fully consider the evidence of Dr. Thomas Duc. The Commissioner argues that substantial evidence[1] supports the ALJ's decision that Plaintiff was no longer disabled after November 17, 2000, due to medical improvement related to his ability to work.

Plaintiff suffered a crush injury of the third finger on his left (non-dominant) hand in a work-related accident in December 1993. On December 23, 1993, Dr. Gerald Shealy, a hand specialist, performed debridement of the tip of Plaintiff's left middle finger. Tr. 244. On March 23, 1994, Dr. Shealy removed an ulnar digital neuroma and contracted skin. Tr. 170, 245. Dr. Shealy removed an ulnar digital neuroma on Plaintiff's left middle finger on September 14, 1994. Tr. 176, 246. On January 10, 1995, Dr. Tracy Harvey removed an ulnar digital neuroma and performed neuroplasty and release of Plaintiff's ulnar digital nerve of his left middle finger. Tr. 182-183. On July 11, 1995, Dr. Harvey removed an ulnar digital neuroma and placed the distal nerve within the second PIP of the left middle finger. Tr. 194. Plaintiff did not return to work

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

after that time. See Tr. 16. On January 20, 1997, Dr. Shealy transposed the ulnar digital nerve of Plaintiff's left middle finger to the palm of his hand. Tr. 249. On November 6, 1997, nerve conduction studies of Plaintiff's left hand and wrist demonstrated left ulnar neuropathy consistent with cubital tunnel syndrome and mild left sensory neuropathy possibly indicative of incipient carpal tunnel syndrome. Tr. 250-251.

Dr. Robert Schwartz treated Plaintiff from February to July 2000. Tr. 287-294. In February 2000, nerve conduction studies of Plaintiff's left hand and wrist were normal (Tr. 288), but a cervical thermogram indicated that Plaintiff had reflex sympathetic dystrophy affecting his entire left upper extremity (Tr. 289). Dr. Schwartz treated Plaintiff with epidural steroid injections, trigger point injections, and nerve blocks. Tr. 291, 293-294.

Dr. Steven J. Novack, a physical rehabilitation specialist, treated Plaintiff between July and November 2000. Tr. 310-320. On November 17, 2000, Dr. Novack noted that Plaintiff had a normal range of motion and strength in the lower extremities with activity and normal gait, without assistive devices; normal range of motion and strength in the right upper extremity; normal range of motion in his left upper extremity at the shoulder and elbow; functional movement at the wrist; and decreased left hand strength due primarily to pain in the third finger of Plaintiff's left hand. Tr. 319. Dr. Novack opined that Plaintiff was not totally disabled from any and all types of work and recommended that Plaintiff perform "at a light duty work capacity." Tr. 319. The ALJ determined that Plaintiff was not disabled as of the date of Dr. Novack's opinion.

On July 16, 2001, Dr. Shealy opined that Plaintiff was unable to perform activities that required fine manipulation of his hand or strenuous and vigorous activities involving gripping and pulling. He thought Plaintiff had reached maximum medical improvement and recommended that

5

Plaintiff continue his limited duty status. Tr. 336. On September 28, 2001, Dr. Shealy stated that he doubted that Plaintiff could return to any gainful employment, but did not place any further restrictions on his ability to work. He noted that Plaintiff would probably need continued medical management including pain medication in the future. Dr. Shealy assigned Plaintiff a twenty to twenty-five percent permanent partial impairment of his left hand. Tr. 337.

On April 13, 2001, Plaintiff was examined by Dr. John Ernst, an orthopaedist. Tr. 333-335. Dr. Ernst noted that Plaintiff's left middle finger had atrophied, there was clubbing of Plaintiff's middle fingernail, Plaintiff had limited range of motion, and he had marked sensitivity. Tr. 334. Dr. Ernst opined that Plaintiff had reached maximum medical improvement and had a forty percent permanent partial impairment of his left hand. Tr. 335.

Dr. Thomas Duc, an anesthesiologist and pain management specialist, began treating Plaintiff in approximately August 2001. Tr. 338-339, 343-348, 350-354, 358. He noted that an MRI showed that Plaintiff had mild disc bulging at C5-6, C6-7, and C7-T1, as well as moderate left nerve root canal narrowing at C5-6. Dr. Duc stated that he was "perplexed" by Plaintiff's reports of pain in his leg and trunk. Tr. 338. On April 11, 2002, Dr. Duc completed a questionnaire in which he opined that Plaintiff could frequently lift and/or carry less than ten pounds; was limited to pushing and pulling with his left upper extremity; could occasionally kneel, crouch, and stoop; could not climb, balance, and crawl; was limited in reaching in all directions with his left hand; could constantly handle, finger, and feel with his right hand; had no visual or communicative limitations; and was limited to being around hazards such as machinery and

6

heights. Tr. 351-354.² On May 29, 2002, Dr. Duc wrote that Plaintiff's injury disabled him extensively; he could use his hand but his ability to obtain gainful employment was difficult; and some vocational rehabilitation might be necessary. Tr. 358.

Plaintiff alleges that the ALJ erred in failing to fully consider the medical evidence of his complaints of pain and side effects of his medication. He also appears to allege that the ALJ erred in not accepting some of the VE's testimony. The Commissioner merely argues that:

> The ALJ gave Plaintiff the benefit of the doubt and found that he was disabled between July 10, 1995, and November 17, 2000. The ALJ's finding that Plaintiff could perform a limited range of light work thereafter is supported by the finding of two treating physicians, Dr. Novack and Dr. Shealy, and an examining physician, Dr. Ernst. Therefore, the ALJ did not have to accept vocational expert testimony which is in response to limitations that are unsubstantiated in the record.

Defendant's Brief, at 14.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying

---

²The ALJ rejected Dr. Duc's opinion because his opinion appeared to rest on an assessment of an impairment that was outside his area of expertise (pain management and anesthesiology) and was not supported by other evidence of the record. Tr. 18.

7

impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ wrote:

> The undersigned finds that the claimant's testimony is essentially credible. The claimant's complaints can be expected given his reflex sympathetic dystrophy, which has been well documented. The claimant has received significant treatment, including five surgeries and epidural injections. The claimant takes numerous medications for pain, and his daily activities were very limited virtually [sic] non-existent. All this supports the claimant's allegations.

Tr. 18. The ALJ also specifically made a finding that "[t]he claimant's testimony is essentially credible." Tr. 22. At the hearing, the ALJ asked the VE to consider a claimant of Plaintiff's age and education with:

> His functional limitations from his testimony. For the purposes of my questions, his testimony is credible: that he has no particular physical limitations in the general sense. That is, speaking in terms of sitting, standing or walking, but with the exception that his left hand–excuse me, his left arm and left leg are having–he has some pain, which is secondary to problems to his left hand, which I'm getting to: The problem with his left leg would limit him from standing and walking any appreciable length of time. His left hand, and this would include his left arm, from his testimony is functionally–has no–he has no capacity in his left hand or left arm, he can't use it at all. But more importantly, his testimony is that he's had severe pain with the crush injury he had back in '93. And the pain is to such a level, it's normally at an eight to 10 level, and he takes many medications for it, including OxyContin. It gets it down to a six out of a ten at time, but he still suffers from pain, which is from his testimony and demeanor distracting and causing him a problem with focus and concentration. From what I can gather, with any activity, physical or mental he has difficulty from the pain he suffers with the effects of the pain.

8

>There's also nonexertional problems with appetite, constipation and his sex life due to pain that he's suffering from.

Tr. 47. In response the VE testified that Plaintiff could not perform any of his past relevant or any other work. Id. The ALJ next asked the VE to consider a claimant who had no bilateral manual dexterity and virtually no use of his left hand, but would be capable of sedentary work and had pain that did not lower his vocational base. Tr. 48. In response, the VE testified that such a claimant would be able to perform jobs including dressing room checker, greeter, and inspector of small food products. Tr. 48-49. Plaintiff's counsel asked the VE whether Plaintiff could perform the jobs identified if he was under the influence of medications such as OxyContin, which produced a woozy or influenced type effect. The VE answered "[i]f it's to the degree he cannot concentrate and perform the expected duties, then that would eliminate the jobs." Tr. 49.[3]

It is unclear from the opinion how the ALJ found Plaintiff to be essentially credible, but also found that Plaintiff's pain did not reduce his ability to perform light work. This action should be remanded to have the ALJ properly evaluate Plaintiff's pain, including the side effects of his medications. In doing so, the ALJ should consider all of the evidence of the record, including the opinions of Plaintiff's treating physicians.[4]

---

[3]In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

[4]Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988); and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating

(continued…)

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled after November 17, 2000 is not supported by substantial evidence and correct under controlling law. This action should be remanded to the Commissioner to properly evaluate Plaintiff's credibility and the effect of his pain and side effects of medication on his residual functional capacity. In doing so, the ALJ should consider all evidence of the record, including the opinions of Plaintiff's treating physicians. If necessary, the Commissioner should obtain VE testimony to determine whether there are a significant number of jobs in the national economy that Plaintiff can perform. It is, therefore,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

>                               Respectfully submitted,
>
>                               s/Joseph R. McCrorey
>                               United States Magistrate Judge

August 5, 2005
Columbia, South Carolina

---

[4] (…continued)
physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.